431 So.2d 1336 (1982)
David A. McCORMACK, alias
v.
STATE.
8 Div. 690.
Court of Criminal Appeals of Alabama.
October 12, 1982.
Rehearing Denied November 2, 1982.
*1337 Donald E. Holt and Joe M. Patterson, Jr., Florence, for appellant.
Charles A. Graddick, Atty. Gen. and Leura J. Garrett, Asst. Atty. Gen., for appellee.
DeCARLO, Judge.
Murder; sentence, thirty-five years' imprisonment.
On November 24, 1981, Charles Newsome was struck and fatally wounded by a truck as he rode a bicycle on Wilson Dam Road in Colbert County. Both the seventeen-year-old driver of the truck and his teenage cousin, who was riding as a passenger, testified the victim suddenly swerved unavoidably into the path of their vehicle as they passed him on the road. They stated the collision was occasioned by the appellant's *1338 suddenly running up to the victim and striking him across the bridge of the nose with a wooden rake.
Appellant denied hitting the man with the rake, and indicated in his testimony that he was chasing his dog away from the victim when he approached the bicycle.

I
Appellant insists the trial court erred in refusing to give a requested written charge on the lesser offense of criminally negligent homicide. Appellant objected to the court's refusal to give the charge, but in no wise stated any specific grounds for his objection to the refusal.
Where a defendant objects to the trial court's refusal or omission to charge on a particular subject, as above, the proper procedure is to request a written charge. Hollis v. State, 399 So.2d 935 (Ala.Cr.App. 1981). However, upon the court's refusal to so charge, the defendant must both call the trial court's attention to the specific refused written charge and set out specific grounds for his objection to the refusal of such charge. Allen v. State, 414 So.2d 989 (Ala. Cr.App.1981), aff'd, 414 So.2d 993 (Ala. 1982). Because appellant failed to set forth any grounds for his objection, this matter is not before the court for review. Allen, supra.

II
Appellant alleges neither count of the two-count indictment was sufficient to sustain a verdict of guilty against appellant. After the completion of closing arguments, appellant's motion to quash count one of the indictment was denied by the trial court. No motion was made by appellant as to count two. Appellant filed a demurrer to the indictment prior to trial, but it did not specifically address the issue as raised on appeal. A pretrial motion to quash the indictment which did substantially address the issue was also filed by appellant.
Where one or more counts of a multicount indictment are sustained by the evidence, a general verdict of guilty, as rendered in the instant case, will be referred to the good count. Jones v. State, 373 So.2d 1221 (Ala.Cr.App.), cert. denied, 373 So.2d 1225 (Ala.1979).
Because we find the evidence to be sufficient to sustain a general verdict under count one of the indictment, we pretermit discussion of count two. Count one appears in the record as follows:
"The Grand Jury of said County charge that before the finding of this Indictment David McCormack, alias David Anderson McCormack, whose name is otherwise unknown to the Grand Jury than as stated, did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said David McCormack and did thereby cause the death of Charles Newsome by striking Charles Newsome with a yard rake while the said Charles Newsome was riding a bicycle thereby causing the said Charles Newsome to swerve into the path of a vehicle being driven by Mike Chaney which said vehicle struck the said Charles Newsome, ..."
Section 13A-6-2(a)(2), Ala.Code 1975, requires conduct which manifests an extreme indifference to human life, and not to a particular person only. Its gravamen is the act of recklessly engaging in conduct which creates a grave risk of death under circumstances "manifesting extreme indifference to human life." What amounts to "extreme indifference" depends on the circumstances of each case, but some shocking, outrageous, or special heinousness must be shown. Commentary to § 13A-6-2(a)(2), Ala.Code 1975; Northington v. State, 413 So.2d 1169 (Ala.Cr.App.1981), cert. denied, 413 So.2d 1172 (Ala.1982).
We find that appellant's act of striking a person while riding a vehicle which depends on one's sense of equilibrium to maintain its steady course, while the same is being ridden on a highway occupied by numerous motor vehicles, is an act which creates a grave risk of death to human life *1339 in general. Here, the appellant, by propelling an innocent person into a public thoroughfare, created an obstacle which endangered all motorists in the vicinity, as well as the deceased individually.
In the above instance we find conduct distinguishable from that which creates a purposeful or knowing risk to one individual only. While a risk to the deceased in particular was created by appellant's conduct, the conduct showed an indifference to human life generally by the grave risk created to all those who might occupy the highway.
The evidence indicated it was not the blow struck by appellant which caused the victim's death, but the injuries inflicted by the collision occasioned by appellant's propelling the victim into the highway as an obstacle in the course of moving traffic. Certainly it was foreseeable that many persons in addition to the victim were potentially endangered by such an act.
We are satisfied that appellant, under circumstances manifesting extreme indifference to human life, recklessly engaged in conduct which created a grave risk of death to a person other than himself and thereby caused the victim's death.

III
Appellant contends the trial court erred in disallowing the testimony of appellant's stepmother as to appellant's mental status offered in support of appellant's insanity plea. Appellant points to the following specific testimony from the trial record in support of his contention:
"MR. HEFLIN CONTINUES: Mrs. McCormack, have you ever noticed anything out of the ordinary in David's mental statehow he acts sometimes?
"A. Yes, he is not like our other children. I mean, heI don't know how to describe it.
"Q. I know it's hard to go into, but has he had any problems?
"A. Yes, heYou know; he wouldI just don't know how to put it into words.
"Q. Well, do you have any knowledge has he ever seen any professional help?
"A. This, I don't know for sure, but I was under the impression that when he was in Baton Rouge, Louisiana, that he did spend time there in a
"MR. PATTON: Now I'm going to object to it, if it please the Court, she said she didn't know, but was under the impression.
"BY THE COURT: Sustain the objection.
"A. And on two different occasions, other than this one, I had him to a local psychiatrist here, because we felt like there was something, you know, bothering David. And one other time, we tried to get him in the army, and they told us that
"MR. PATTON: Now I'm going to object to what they told.
"BY THE COURT: Sustain the objection; that would be hearsay.
"A. Okay, andI don't know how
"MR. HEFLIN: One moment. By your testimony, Mrs. McCormack, are you saying there have been some problems with David?
"A. There has."
Appellant argues the trial court's ruling violated the rule which states that if it is material to prove that a person at a specific time was mentally deranged, proof that a statement was made to him prior to the time in question which was reasonably calculated to create, and which is offered for the purpose of showing mental derangement is not violative of the hearsay rule. C. Gamble, McElroy's Alabama Evidence, § 273.02 (3rd ed. 1977).
First, it is not at all clear from the record that the statement which appellant's mother attempted to repeat at trial was in the first instance directed to appellant himself.
Second, we believe the thrust and intent of the rule appellant relies upon to be different from what he perceives it to be. The hearsay rule forbids the use of an out-of-court statement offered to prove the truth of the matter asserted. The exception to which appellant alludes allows the *1340 use of the utterance as circumstantial evidence which does not infer from the statement the truth of the matter therein asserted. 6 Wigmore, Evidence, §§ 1788-1790 (Chadbourn rev. 1976).
"Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned.
. . . .
"Insanity may be indicated by the mode of conduct upon information received (228, supra), and the communication thus becomes admissible." 6 Wigmore, Evidence, § 1789, supra.
Because the statement which appellant attempted to introduce through his stepmother was offered as hearsay for the purpose of proving the truth of the matter asserted, that is, that the appellant was insane, there was no error in the court's ruling. Insanity may not be proved by hearsay. Howard v. State, 347 So.2d 574 (Ala.Cr.App.1977).
No error harmful to the substantial rights of appellant having been demonstrated, this case is affirmed.
AFFIRMED.
HARRIS, P.J., and TYSON and BARRON, JJ., concur.
BOWEN, J., dissents.
BOWEN, Judge dissenting.
I disagree with the majority finding that the "appellant's act of striking a person while riding a ... (bicycle), while the same is being ridden on a highway occupied by numerous motor vehicles, is an act which creates a grave risk of death to human life in general." As in Northington v. State, 413 So.2d 1169 (Ala.Cr.App.1981), cert. quashed, 413 So.2d 1172 (Ala.1982), the appellant's acts were specifically directed at the particular victim and no other. The type of murder embraced by Alabama Code 1975, Section 13A-6-2(a)(2), and for which the appellant stands convicted "is intended to embrace those cases where a person has no deliberate intent to kill or injure any particular individual." Northington, 413 So.2d at 1171. While the appellant's actions evince a high degree of recklessness, they do not exhibit the degree of malice necessary to support a conviction for murder. Napier v. State, 357 So.2d 1011 (Ala.1978).