[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 102 
Appellant Lorene Sanders Mims, a woman, was convicted of rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975. This gender-based code section is applicable to females by virtue of the complicity statutes, §§ 13A-2-23 and13A-2-25, Code of Alabama 1975. The trial court sentenced appellant to twelve years in the state penitentiary.
The victim of the rape is the twelve-year-old daughter of appellant. The victim testified that appellant, her mother, would beat her with extension cords and belt buckles and force her to engage in sexual intercourse with appellant's boyfriend, Ronnie Knight. The victim testified that appellant would sit and watch while the rapes took place. The victim stated that the last rape occurred on March 23, 1985. The jury returned a verdict of guilty, hence this appeal.
 I
Appellant maintains that there was insufficient proof of sexual intercourse to sustain her conviction of rape. Appellant is correct in her contention that "penetration by the male sex organ into the sexual organ of the female must be shown in order to sustain a conviction of rape. . . ." Jackson v. State,471 So.2d 516, 517 (Ala.Cr.App. 1985); Long v. State,370 So.2d 354 (Ala.Cr.App. 1979); Smith v. State, 345 So.2d 325
(Ala.Cr.App. 1976). However, "[t]he nature of the penetration that is essential for a rape conviction need not be proved in any particular form of words." Swint v. State, 455 So.2d 285,287 (Ala.Cr.App. 1984); Edmonds v. State, 380 So.2d 396, 398
(Ala.Cr.App. 1980).
At trial, the victim testified as follows:
"Q: Okay, now, what did he do to you?
"A: He had sex with me.
 "Q: Okay, now, when you say 'he had sex,' did he put his penis inside you?
"A: Yes, ma'am."
"Whether an actual penetration is accomplished is a question of fact to be determined by the jury." Rowe v. State,421 So.2d 1352, 1356 (Ala.Cr.App. 1982); Jackson v. State, 390 So.2d 671
(Ala.Cr.App.), cert. denied, 390 So.2d 675 (Ala. 1980).
We hold that the evidence was sufficient to justify the jury's finding that there was penile penetration of the victim's vagina.
 II
Appellant argues that the trial court erred in allowing expert testimony as to the ultimate fact in issue. The record does not support this contention. Dr. James Chudy, a psychologist, testified that there are common characteristics exhibited by sexually abused children and that the victim exhibited these same characteristics. "[O]pinion testimony, offered by an expert witness, may be based upon facts within his knowledge. . . ." Thomas v. State, 455 So.2d 278
(Ala.Cr.App. 1984); C. Gamble, McElory's Alabama Evidence, § 130.01 (3d ed. 1977).
The ultimate fact in issue was whether appellant participated in a rape of the victim. This witness, in no wise, offered ultimate fact testimony.
 III
Appellant contends that the trial judge improperly charged the jury. Appellant argues that since the state elected to prosecute an occurrence of a specific month, namely, September 1984, the jury should have been charged so as to require a finding of the crime in that specific month. Here again, this contention is not supported by the record. The indictment specifies no date. Furthermore, it is well settled that failure to tender requested jury charges, as was the case here, precludes review on appeal. Jones v. State, 453 So.2d 1330
(Ala.Cr.App. 1984); Giles v. *Page 103 State, 440 So.2d 1237 (Ala.Cr.App. 1983); Fields v. State,424 So.2d 697 (Ala.Cr.App. 1982).
 IV
A case worker employed by the state testified that the victim had reported incidents of rape and abuse on a prior occasion and later recanted her charges. The case worker was allowed to testify, over appellant's objection, that children often recant stories of abuse.
Appellant maintains that such testimony is analogous to supporting the victim's credibility by proof of prior consistent statements, and as such is inadmissible. To say that something is analogous is to admit that it is not the same thing. The fact that many children recant their statements of abuse does not directly bolster the victim's credibility.
 V
Appellant contends that count two of the indictment warranted dismissal because it did not allege that Ronnie Knight was a male and, therefore, did not sufficiently set out a charge of rape in the first degree. The indictment charging appellant is as follows:
 "The GRAND JURY of said County charge, that, before the finding of this indictment LORENE SANDERS MIMS whose name is to the Grand Jury otherwise unknown than as stated, did, with the intent to promote or assist the commission of the offense of Rape, aid or abet Ronnie Knight to commit the offense of Rape by aiding or abetting the said Ronnie Knight, a male, to engage in sexual intercourse with [name omitted], a female, by forcible compulsion, in violation of § 13A-6-61
of the Code of Alabama, against the peace and dignity of the State of Alabama.
"COUNT TWO:
 "The GRAND JURY of said County charge, that, before the finding of this indictment LORENE SANDERS MIMS whose name is to the Grand Jury otherwise unknown than as stated, did, with the intent to assist Ronnie Knight in the commission of the offense of Rape, to-wit: sexual intercourse with [name omitted], a female under the age of twelve, by the said Ronnie Knight, a person over the age of eighteen, a violation of § 13A-6-61 of the Code of Alabama, assist Ronnie Knight in having sexual intercourse with [name omitted] by forcefully compelling [name omitted] to have sexual intercourse with Ronnie Knight, to-wit: by beating [name omitted] with a cord, in violation of § 13A-6-61 of the Code of Alabama. . . ."
This court held in Hutto v. State, 465 So.2d 1211
(Ala.Cr.App. 1984):
 "Where one or more counts of a multi-count indictment are sustained by the evidence, a general verdict of guilty . . . will be referred to the good count." At 1212, quoting McCormack v. State, 431 So.2d 1336 (Ala.Cr.App.), rev'd on other grounds, 431 So.2d 1340 (Ala. 1982), on remand, 431 So.2d 1341 (Ala.Cr.App. 1983).
Count one of the indictment charges a violation of §13A-6-61(a)(1), Code of Alabama 1975, to-wit:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion."
Count two of the indictment charges a violation of §13A-6-61(a)(3), Code of Alabama 1975.
 "(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old."
The jury in the case sub judice returned a general verdict of guilty of rape in the first degree. There is a factual basis for this verdict. Upon authority of Hutto, supra, the verdict is considered to address a valid count.
 VI
Finally appellant Mims argues that the court erred to reversal by overruling her objection to two questions during the direct *Page 104 
examination of a rebuttal witness, Assistant District Attorney Harrison. There had been testimony throughout this trial on the subject of an alleged rape of this victim by two young men. The questions objected to here dealt with whether the appellant had received a "pay off' from the parents of these two young men in exchange for her non-cooperation in their prosecution. She argues that this was an improper attempt to impeach her by testimony of specific bad acts. The record pertaining to this contention is as follows:
 "Q: Did you ever discuss with the defendant here a payoff that she was to receive from these two defendants' parents?
 "MR. RATCLIFFE: Judge, I object to that. That's improper impeachment. It's irrelevant and immaterial, and trying to show a specific bad act.
 "MS. McCONAHA: I think it goes to her credibility and honesty, Judge, when she took the stand.
"THE COURT: Overruled.
"MR. RATCLIFFE: Judge, —
 "THE COURT: I agree that it can't be offered for the purpose of proving a specific bad act; however, if nothing — if for no other reason, it would be admissible as impeaching the testimony of the defendant. I overrule the objection.
 "A: Yes, we did, and that was, I think, the third occasion I had to speak to Ms. Mims, and that was the morning of one of the cases, and I don't remember which of the two boys was coming up for trial, and I was going over it with her. And I believe this is when I was advised of this. Sometime after the charges against the two boys had been brought, they came — or one of them came — to her house and talked to her about, you know, they would pay whatever injuries or pay her some money for the damages to her daughter — quote, unquote — if they would drop the charges.
 "Q: Did she ever reassure you that she hadn't taken money to drop those charges?
 "A: Oh, she did. Absolutely. I asked her about that and, in fact, in the affidavit that was presented — that I referred to earlier — it says that they had never received — she never received any money from the boys to drop the charges. . . ."
The testimony was admissible for purposes of impeaching appellant, who had in turn sought to impeach the testimony of her daughter, the victim. Testimony pertaining to the collateral rape charges against the two boys had previously been admitted without any objection and was before the jury already. Appellant had testified in considerable detail about the incident on cross-examination without objection. She admitted that she signed an affidavit in which she stated that she and her daughter were moving to California and that her daughter had told her that the boys did not rape her. She admitted on cross-examination without objection to having told Mr. Harrison that she had lied in the affidavit. Appellant, in attempting to discredit the testimony of her daughter, claimed her daughter lied and could not be believed. She said that her daughter lied about the alleged collateral rape. The whole relationship between appellant and her daughter and appellant's activities in reference to the collateral rape charges is relevant, material, and probative in determining who is telling the truth in reference to the instant charges. The evidence of the other alleged rape was intertwined with evidence relating to this case. Even though the questions involved a collateral matter, it was relevant to the issues in this case and the questions were calculated to test the credibility and weight of appellant's testimony.
Second, the details concerning the collateral rapes, the affidavit and its truthfulness, were all introduced in evidence without objection before the question objected to above was asked. The testimony was to that degree cumulative. Even if the *Page 105 
ruling was erroneous, at this stage of the proceedings it would have been error without injury.
Third, a close look at the specific questions objected to and the answer given does not show injury to the appellant. Harrison stated that appellant reassured him that she had never taken any money to drop the charges.
AFFIRMED.
All the Judges concur.